Brian S. Kabateck, SBN 152054
  bsk@kbklawyers.com
Anastasia K. Mazzella, SBN 245201
  am@kbklawyers.com
Shant A. Karnikian, SBN 285048
  sk@kbklawyers.com
**KABATECK BROWN KELLNER LLP**
644 S. Figueroa Street
Los Angeles, CA 90017
Tel.: (213) 217-5000
Fax: (213) 217-5010

Charles L. Murray III, SBN 195053
**LAW OFFICES OF CHARLES L. MURRAY III**
444 S Flower Street, Suite 2530
Los Angeles, CA 90071
Tel.: (213) 627-5983
Fax: (213) 627-6051

Attorneys for Plaintiffs JOHN MARIN and
KEYAN BAGHERI, individuals, on behalf of
themselves and all others similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MARIN and KEYAN BAGHERI, individuals; on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>GENERAL ASSEMBLY SPACE, INC.,<br>        Defendant. | Case No.: 2:17-CV-05449-SJO-KSx<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      July 30, 2018<br>Time:      10:00 a.m.<br>Judge:     Hon. S. James Otero<br>Courtroom:  10C<br><br>Complaint Filed:  June 19, 2017 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 30, 2018 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 10C of the above-entitled court located at 350 W. First Street, 10th Floor, Los Angeles, California 90012, Plaintiffs JOHN MARIN and KEYAN BAGHERI ("Plaintiffs") will, and hereby do, move for an order: (1) preliminarily approving the proposed Stipulation of Class Action Settlement and Release of Claims ("Settlement Agreement" or "Settlement") in the above-captioned case, (2) approving appointment of Rust Consulting ("Rust") as the settlement administrator, (3) approving and directing distribution of the class notice to the Settlement Class, (4) approving the proposed Class Representatives and Co-Class Counsel, and (5) setting a final fairness and approval hearing.

Pursuant to Federal Rules of Civil Procedure, Rule 23, which provides for court approval of the settlement of a class action, Plaintiffs and Defendant GENERAL ASSEMBLY SPACE, INC. ("Defendant") (collectively, the "Parties") respectfully request that this Court grant preliminary approval of the proposed Settlement Agreement.

The basis for this Motion is that the proposed Settlement is fair, adequate, and reasonable and in the best interests of the Settlement Class as a whole, and that the procedures proposed are adequate to ensure the opportunity of the proposed Settlement Class Members to participate in, opt out of, or object to the Settlement.

This Motion will be based on the Memorandum of Points and Authorities set forth herein; the concurrently filed Declaration of Brian S. Kabateck; the proposed Settlement Agreement, attached to the Declaration of Brian S. Kabateck as **Exhibit 1**[1], including the Notice of Proposed Class Action Settlement (attached thereto as **Exhibit A**), the proposed Notice of Estimated Individual Settlement Payment

---

[1] A fully-executed version of the Agreement is currently pending due to technical issues with transmitting one of the signatures. A fully-executed version will be submitted to the Court as soon as it is obtained. (Kabateck Decl., ¶ 2.)

(attached thereto as **Exhibit B**); and such evidence or oral argument as may be presented at the preliminary approval hearing; and on the complete records and file herein.

Dated:  July 2, 2018                    **KABATECK BROWN KELLNER LLP**

By:    /s/ Brian S. Kabateck
          Brian S. Kabateck
          Shant A. Karnikian

          Attorneys for Plaintiffs JOHN MARIN and
          KEYAN BAGHERI, individuals, on behalf of
          themselves and all others similarly situated

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................... iii

I.    INTRODUCTION......................................................................................1

II.   PROCEDURAL HISTORY .......................................................................1

III.  SUMMARY OF THE PROPOSED SETTLEMENT.................................3

   A.    The Settlement Class Definition ........................................................3

   B.    Stipulation of Settlement ...................................................................4

   C.    Value of the Settlement to the Class ..................................................5

   D.    Class Notice........................................................................................8

   E.    Procedure for Uncashed Checks .........................................................9

   F.    Attorneys' Fees and Litigation Expenses ...........................................9

IV.   STANDARDS FOR APPROVAL OF SETTLEMENT.............................10

   A.    The Two-Step Approval Process........................................................10

   B.    Class Counsel's Thorough Investigation and Litigation Efforts.........11

   C.    Procedures for Settlement Before Class Certification ........................12

      1.    Ascertainability and Numerosity..................................................12

      2.    Predominance of Common Questions of Law and Fact .................13

      3.    Typicality .....................................................................................14

      4.    Adequacy......................................................................................14

V.    THE SETTLEMENT IS FAIR AND REASONABLE BASED UPON OBJECTIVE EVIDENCE...................................................................................................15

   A.    The Strength of Plaintiffs' Case and Complexities of Further Litigation............15

   B.    The Benefits Conferred by the Settlement .........................................17

   C.    The Experience and Views of Counsel ..............................................18

i

D.    The Absence of "Obvious Defects" or Any Indicia of Unfairness. ....................19

E.    The Settlement Falls Within the Range of Possible Approval. ...........................19

VI.  CONCLUSION ...........................................................................................................21

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

# TABLE OF AUTHORITIES

2

## Cases

3

*Amchem Prods. v Windsor*

4

    (1987) 521 U.S. 591 ...............................................................12

5

*Bartold v. Glendale Fed. Bank*

6

    (2000) 81 Cal.App.4th 816 ......................................................13

7

Cal. Lab. Code § 226.8(a)(1) ......................................................14

8

*Classen v. Weller*

9

    (1983) 145 Cal.App.3d 27 ........................................................14

10

*Collins v. Rocha*

11

    (1972) 7 Cal.3d 232 .................................................................13

12

*Dunk v. Ford Motor Co.*

13

    (1996) 48 Cal.App.4th 1794 ............................................12, 13, 14

14

*Hammon v. Barry*

15

    (D.D.C. 1990) 752 F.Supp. 1087 ..........................................16, 18

16

*In re Armored Car Antitrust Litigation*

17

    (N.D. Ga. 1979) 472 F.Supp. 1357 ............................................16

18

*In re Chicken Antitrust Litigation*

19

    (N.D. Ga. 1980) 560 F.Supp. 957 ..............................................16

20

*In re School Asbestos Litigation*

21

    (3d Cir. 1990) 921 F.2d 1330 ....................................................15

22

*In re Vitamin Cases*

23

    (2003) 110 Cal.App.4th 1041 ....................................................10

24

*Lafitte v. Robert Half Int'l, Inc.*

25

    (2016) 205 Cal.Rptr.3d 555 ......................................................10

26

*Lealao v. Beneficial California, Inc.*

27

    (2000) 82 Cal.App.4th 19 .........................................................10

28

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

(7th Cir. 1987) 834 F.2d 677 ......................................................................16

*McGee v. Bank of America*

   (1976) 60 Cal.App.3d 442 ......................................................................15

*Priddy v. Edelman*

   (6th Cir. 1989) 883 F.2d 438 ...................................................................16

*Reyes v. Bd. of Supervisors*

   (1987) 196 Cal.App.3d 1263 ...................................................................13

*Rodriguez v. West Publ'g Corp.*

   (9th Cir. 2009) 563 F. 3d 948 ..................................................................20

*Sav-On Drug Stores, Inc. v. Superior Court*

   (2004) 34 Cal.4th 319 ..............................................................................13

*Steinberg v. Carey*

   (S.D.N.Y. 1979) 470 F. Supp. 471 .........................................................16

*Vasquez v. Coast Valley Roofing, Inc.*

   (E.D. Cal. 2009) 670 F.Supp.2d 1114 .....................................................20

*Wal-Mart Stores, Inc. v. Dukes*

   (2011) 131 S.Ct. 2541.............................................................................20

*Wershba v. Apple Computer, Inc.*

   (2001) 91 Cal.App.4th 224 ......................................................................12

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").............................2

Fed. R. Civ. Proc. 23 ................................................................2, 10, 20

**Other Authorities**

4 Alba Conte & Herbert B. Newberg

   (4th ed. 2002) Newberg on Class Actions......................................11, 16, 18

*Manual for Complex Litigation*

   (3d ed. 1995).............................................................................10

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs JOHN MARIN and KEYAN BAGHERI ("Plaintiffs") respectfully submit this Motion seeking preliminary approval of a proposed settlement ("Settlement") of a class action filed on behalf of approximately 1,214 current and former instructors engaged by Defendant GENERAL ASSEMBLY SPACE, INC. ("Defendant") (collectively with Plaintiffs, the "Parties") relating to claims for violations of the California Labor Code arising out of the alleged misclassification of instructors (the "Class Action").

After engaging in significant informal discovery and investigation, the Parties attended a mediation session on March 16, 2018 with the Hon. Enrique Romero (Ret.), a well-respected and experienced class action mediator. Although the mediation did not result in an immediate resolution of the case, following the mediation, Judge Romero circulated a detailed mediator's proposal, which the Parties accepted on March 28, 2018. The Parties have agreed to settle all claims made by Plaintiffs for the total sum of One Million Dollars ($1,000,000). The complete terms of the proposed Settlement are set forth in the proposed Stipulation of Class Action Settlement and Release of Claims ("Settlement Agreement" or "Agreement" or "Settlement"), which is attached to the Declaration of Brian S. Kabateck as **Exhibit 1**. (Kabateck Decl., ¶ 2.)

For the reasons more fully discussed below, Plaintiffs request that the Court grant this Motion for Preliminary Approval of Class Action Settlement in all respects and enter the submitted preliminary approval order filed concurrently herewith.

### II.    PROCEDURAL HISTORY

On July 24, 2017, Plaintiffs filed this class action as individuals on behalf of themselves and all similarly situated current and former instructors engaged by Defendant in the United States District Court for the Central District of California, Case No. 2:17-CV-05449-SJO-KSx (the "Class Action"). (Dkt. No. 1.)

The operative First Amended Complaint (Dkt. No. 29) alleges the following

1

causes of action: (1) failure to pay overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"); (2) failure to pay all overtime wages under California law; (3) failure to pay minimum wages under the FLSA; (4) failure to pay minimum wages under California law; (5) failure to furnish timely and accurate wage statements; (6) failure to pay all wages upon separation; (7) failure to provide and accurately record meal periods or pay premium wages in lieu thereof; (8) failure to provide rest periods or pay premium wages in lieu thereof; (9) violation of California's Unfair Competition Law ("UCL") under California Business & Professions Code section 17200, et seq.; and (10) penalties under California's Private Attorneys General Act ("PAGA").

Plaintiffs were initially represented by Jamin Soderstrom of Soderstrom Law PC ("Former Counsel"). In January of 2018, Brian S. Kabateck of Kabateck Brown Kellner LLP and Charles L. Murray III of The Law Offices of Charles L. Murray III substituted in as counsel for Plaintiffs (together, "Co-Class Counsel"). (Dkt. Nos. 33-36.) Defendant's counsel is Davis Wright Tremaine LLP, including attorneys Janet Grumer, Kathryn S. Rosen, and C. Beatrice Nuńez-Bellamy.

On February 28, 2018, pursuant to a Stipulation by the Parties, this Court dismissed the first and third causes of action with prejudice. (Dkt. No. 40.)

Plaintiffs allege that actionable violations of the California Labor Code were committed by Defendant based on evidence showing that the work performed by the instructors engaged by Defendant and the conditions of employment were that of an "employee" rather than an "independent contractor."

Defendant denies all liability in this Class Action and contends, *inter alia*, that instructors retained significant discretion in performing their services, including the manner in which they performed those services, and that several instructors did business with Defendant as business entities and not individuals. These legal obstacles were considered within the rubric of analyzing the reasonableness of this Settlement. (Kabateck Decl., ¶ 5.)

On March 16, 2018, the Parties participated in one mediation session with the

Hon. Enrique Romero (Ret.), a well-respected and experienced class action mediator. Although the Parties engaged in arms-length mediation through Judge Romero, the mediation did not result in an immediate resolution of the case. Following the mediation, Judge Romero circulated a detailed mediator's proposal for settlement in the amount of One Million Dollars ($1,000,000.00), which the Parties accepted on March 28, 2018.

Prior to the mediation session, and prior to accepting the mediator's proposal, Co-Class Counsel conducted a thorough investigation into the facts of the Class Action, including an exchange of information and review of comprehensive data. Co-Class Counsel is knowledgeable about and has done extensive research with respect to the applicable law and potential defenses to the claims in the Class Action. Based on the documents and data provided by Defendant, and their own independent investigation and evaluation, Co-Class Counsel and Plaintiffs are of the opinion that the settlement with Defendant for the consideration of One Million Dollars ($1,000,000.00) and on the terms set forth in the Settlement Agreement (**Exhibit 1**) is fair, reasonable, and adequate, and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendant, and numerous potential appellate issues. (Kabateck Decl., ¶ 5.)

The parties jointly drafted and finalized the formal Settlement Agreement (**Exhibit 1** to the Kabateck Decl.), along with the Notice of Proposed Class Action Settlement (**Exhibit A** to Exhibit 1 of the Kabateck Decl.) and the Notice of Estimated Individual Settlement Payment (**Exhibit B** to Exhibit 1 of the Kabateck Decl.).[2]

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

### A.    The Settlement Class Definition

The Parties agree that the Settlement Class should be defined as follows:

*All current and former instructors engaged by General Assembly Space, Inc. as independent contractor instructors, whether hired as a business entity or as an individual, including without limitation all immersive course instructors, part*

---

[2] All references hereinafter to "Ex." will refer to Exhibits to the Declaration of Brian S. Kabateck.

*time course instructors, classes and workshop instructors, and assistant or associate instructors, in California from July 24, 2013 through the date preliminary approval is granted, or June 30, 2018, whichever is sooner.*

Based on Defendant's records as of June 2018, there are 1,214 Class Members who worked as independent contractor instructors for Defendant during the Class Period.

## B. Stipulation of Settlement

The Settlement describes in detail the terms of the proposed settlement reached by the Parties and the details of the recovery for the Class. (**Ex. 1**.) The Settlement Agreement is made in compromise of all disputed claims included in the operative Complaint. All Settlement Class Members seek the same legal remedies under the same state laws. The payments to be made by Defendant under this Settlement will include all amounts sought by Plaintiffs and the Class in the Class Action (*Id*. at § I.P.) The material terms of the Settlement are as follows:

1. Defendant shall pay $1,000,000 to settle the Class Action to the Settlement Administrator, which includes amounts to be paid to Class Members, the awards for Attorneys' fees and costs and Named Plaintiffs' Enhancement Payments, and the settlement administration expenses, no portion of which will revert back to Defendant. (*Id.*, at §§ II.A., I.M.)

2. The Gross Settlement Amount is non-reversionary—none of it will revert to Defendant. In addition, it is not a claims-made settlement. (*Id.*, at ¶ I.P, II.A.) Any unclaimed amounts will be paid to the California Unclaimed Wages Fund in the name of the Participating Class Member.

3. The Settlement Administrator will be responsible for calculating Individual Settlement Payments to be paid to each Participating Class Member, which is based on the number of Qualifying Course Weeks and Course Type worked by each Participating Class Member during the Class Period. (*Id.*, at §§ I.I., I.FF., I.Q, II.A.1.)

4. A judgment will be entered on the Settlement releasing Defendant from any claims arising during the Class Period by the Class Members. (*Id.*, at § III.)

5. The Settlement Administrator shall be Rust Consulting ("Rust" or "Settlement Administrator"). Defendant will pay the Settlement Administrator for reasonable settlement administration fees not to exceed Twenty Thousand Dollars ($20,000), which shall be deducted and paid solely from the Gross Settlement Amount. Any fees incurred by Rust in excess of the foregoing amount shall also be paid solely from the Gross Settlement Amount. (*Id.*, at §§ I.FF. I.GG., II.E.)

6. Class Counsel will file an application requesting that the Court award an Individual Enhancement to Named Plaintiffs JOHN MARIN and KEYAN BAGHERI in an amount not to exceed Fifteen Thousand Dollars ($15,000) for each, which Defendant will not oppose. (*Id.*, at § I.H., I.M., II.B.)

7. In conjunction with the Joint Motion for Final Approval, Co-Class Counsel will file an application requesting that the Court award Co-Class Counsel attorneys' fees in an amount not to exceed one-third (1/3) of the Gross Settlement Amount or Three Hundred Thirty-Three Thousand, Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($333,333.33) and costs as proven, not to exceed Fifteen Thousand Dollars ($15,000), to which Defendant shall not object (*Id.*, at § II.D.) Defendant will not oppose this application. (*Ibid.*)  Such awards shall be inclusive of  compensation to Former Counsel.

8. A total of Twenty-Five Thousand Dollars ($25,000) will be allocated to the Labor and Workforce Development Agency ("LWDA") for civil penalties under PAGA, of which 75% (equal to $18,750) will be paid to the LWDA and 25% (equal to $6,250) will be paid to Class Members. (*Id.*, at § II.C.)  The Settlement Administrator will deduct these amounts from the Gross Settlement Amount and direct them to the LWDA and Class Members in their Individual Settlement Payments. (*Id.*, I.P.)

9. The "Class Period" runs from July 24, 2013 through the date preliminary approval is granted, or June 30, 2018, whichever is sooner. (*Id.*, at § I.G.)

C.    <u>Value of the Settlement to the Class</u>

The proposed Settlement provides for a simple procedure to participate in or exclude oneself from the settlement, which imposes minimal burdens on the Class. (Kabateck Decl., ¶ 9.)  Individual Settlement Payments will be paid from the Non-Reversionary Settlement Fund to Participating Class Members based on the number of Qualifying Course Weeks and Course Type worked by each Participating Class Member during the Class. (*Ibid.*)  The precise calculation for determining the exact amounts of Individual Settlement Payments is described in detail below.

The Gross Settlement Amount is $1,000,000.00.  (**Ex. 1**, §§ I.P., II.A.)  The "Net Settlement Amount" means the portion of the Gross Settlement Amount remaining after deduction of Court-awarded and approved attorneys' fees and costs, Class Representative Enhancement Payments, Settlement Administrator's costs, California's Private Attorneys General Act ("PAGA") penalties, and any other settlement-related costs and expenses customarily paid through a common fund settlement, with the exception of the employer's portion or payroll taxes. (*Id.* at § I.R.) This table summarizes the Settlement Agreement amounts and the calculation for determining the Net Settlement Amount:

| | | |
|---|---|---|
| Gross Settlement Amount | $ | 1,000,000.00 |
| Attorneys' Fees | $ | (333,333.33) |
| Attorneys' Costs Incurred | $ | (15,000.00) |
| Class Representative Enhancements | $ | (30,000.00) |
| Settlement Administrator's Costs | $ | (25,000.00) |
| PAGA Penalties to the LWDA | $ | (18,750.00) |
| **Net Settlement Amount** | **$** | **577,916.67** |

There will be at least Five Hundred Seventy-Seven Thousand Nine Hundred Sixteen Dollars and Sixty-Seven Cents ($577,916.67) available for the Participating Class Members. (Kabateck Decl., ¶ 10.)  Assuming none of the 1,214 Class Members opts out and the total of all 20,384 Qualifying Course Weeks Worked remain unchanged, the average (arithmetic mean) Individual Settlement Payments per Qualifying Work Week is $28.35. (*Ibid.*)

The Individual Settlement Payments paid from the Net Settlement Amount to

Participating Class Members will be determined as follows:  Each Class Member who does not opt out shall receive a proportional share of the Net Settlement Amount. Proportional Individual Settlement Payments shall be computed and paid as follows:

    a. Determine the number of Course Weeks Worked in each Course Type by Participating Class Members;

    b. Multiply the number of Course Weeks Worked for Immersive Courses by five (5), then add the product to the number of Part Time and the number of Workshop Course Weeks Worked;

    c. Divide the Net Settlement Amount by the sum determined in  subsection (b); and

    d. Pay Individual Settlement Payments to each Participating Class Member as follows:  for each Class Member, the number of  Immersive Course Weeks Worked times five (5) plus the number of  Part Time Course Weeks Worked plus the number of Workshop Course Weeks Worked, times the product of subsection (c).

Individual Settlement Payments to be paid to each Participating Class Member will be allocated as follows:

- One-third to wages, subject to applicable withholdings, reported on a Form W-2.
- One-third to interest, not subject to withholdings, reported on a Form 1099; and
- One-third to penalties, not subject to withholding, reported on a Form 1099.

(**Ex. 1**, § II.A.2.)  Each Participating Class Member, Co-Class Counsel, and Class Representative payment recipient will be responsible for remitting to state and/or federal taxing authorities any applicable taxes which may be owed on the non-wage portion of any payment received pursuant to this Agreement, except as provided by the Settlement Agreement. (*Ibid.*)  Class Members who may have questions about their tax liability should consult independent tax counsel. (*Ibid.*)

The claims that Participating Class Members will release are set forth in the Settlement Agreement and discussed herein. (*Id.* at §§ III.A., III.B.)  In exchange for

Individual Settlement Payments, Participating Class Members will release Released Parties from all Released Claims specified in the Settlement Agreement. (*Ibid.*)

### D.    <u>Class Notice</u>

The notice to the Class will be disseminated by the best means possible—direct mail notice. In Plaintiffs' Counsel's experience in comparable cases, notice has been successfully mailed to approximately 90% of the class; a similar result is anticipated here. (Kabateck Decl., ¶ 12.)

Each Class Member will be given notice by first-class mail of the pendency of this Action, the terms of the proposed Settlement (including the Settlement benefits, the scope of claims released, and attorneys' fees and costs), and the right to opt out to the Settlement, object to the Settlement, and dispute the number of Qualifying Work Weeks. (Kabateck Decl., ¶ 12; **Ex. 1** and **2 to Ex. A**.)  Upon the Court's approval of the proposed Notice Packet, it will be disseminated to each Class Member. (Kabateck Decl., ¶ 7.)  Co-Class Counsel will provide to the Court the final versions of the Notice Packet with the Settlement Administrator's Declaration of Compliance when Co-Class Counsel file their Motion for Final Approval. (*Id.*)

To assist the Participating Class Members in understanding the lawsuit and Settlement, and to facilitate informed decisions about the exercise of their rights, the Settlement Administrator will maintain web, electronic mail, and toll-free telephone support services. (Karnikian Decl., ¶ 4.)  Telephone support will include an available live operator during regular business hours to guide callers through the notices to find any information they seek, and if necessary, to answer anticipated questions based on information jointly provided by the Parties. (*Id.*)  The Settlement Administrator will maintain a website that allows users to download settlement documents and other key documents from the Court's file in this Action. (*Id.*)  The Settlement Administrator will redirect Class Members' questions it cannot answer to Co-Class Counsel. (*Id.*)

Notice will be mailed to Class Members by first-class mail, at their last-known addresses provided in Defendant's records provided to the Settlement Administrator,

updated through U.S. Postal Service's National Change of Address ("NCOA") database. (Kabateck Decl., ¶ 13.)  Notices returned as undeliverable shall be re-mailed to the best available address after the Settlement Administrator performs skip-tracing services offered by publicly available databases. (**Ex. A**, § IV.D., Kabateck Decl., ¶ 13.)  This is an ideal notice program, reasonably calculated to *actually* reach approximately 90% of the Class, without (further) compromising Class Members' privacy. (Kabateck Decl., ¶ 12.)

### E.    Procedure for Uncashed Checks

This matter was settled with no claim form requirement and with no residual to revert to Defendant. (**Ex. 1**, § II.A.)  Any portion of a Class Member's settlement not paid as a result of an invalid address or any checks issued by the Settlement Administrator to Participating Class Members not cashed within one hundred and eighty (180) days will be void. (*Ibid*.)  The proceeds from uncashed checks and the amounts that would be paid to Participating Class Members who could not be found shall be paid to the State of California Unclaimed Wages Fund in the name(s) of the corresponding Participating Class Member(s), which shall remain available for those Participating Class Members to claim thereafter. (**Ex. 1**, §§ II.A.3., IV.L.)

### F.    Attorneys' Fees and Litigation Expenses

Class Counsel recognizes that the issue regarding the award of attorneys' fees and costs will be determined at the time of final approval, upon a full presentation of the issues to the Court. (Kabateck Decl., ¶ 8.)  At the time of the fairness hearing, Co-Class Counsel will submit a motion requesting an award of attorneys' fees in an amount ***not to exceed*** one-third (1/3) of the Gross Settlement Fund against the lodestar, which equals $333,333.33 for all attorneys' fees. (**Ex. A**, § I.O., II.D., IV.K.; Kabateck Decl., ¶ 11.) Defendant will not oppose this amount of attorneys' fees. (Kabateck Decl., ¶ 11.)  This is well within the range of the percentage of fees from common funds under California and federal law. In a recent opinion, the California Supreme Court held that trial courts "retain the discretion to forgo a lodestar cross-check and use other means to evaluate the

reasonableness of a requested percentage fee." (*Lafitte v. Robert Half Int'l, Inc.* (2016) 205 Cal.Rptr.3d 555, 575).)  That is, "when an attorney fee is awarded out of a common fund preserved or recovered by means of litigation . . . the award is not per se unreasonable merely because it is calculated as a percentage of the common fund." (*Id.* at 2.)  "[I]n cases in which the value of the class recovery can be monetized with a reasonable degree of certainty, the trial court has discretion to . . . ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace of comparable litigation." (*In re Vitamin Cases* (2003) 110 Cal.App.4th 1041, 1060 (quoting *Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 49–50).)  In the final approval motion, Co-Class Counsel will also request an award of reimbursement of actual costs incurred by Co-Class Counsel in an amount not to exceed $15,000. (**Ex. A**, § II.D.)

As is proper practice for class action attorneys, Settlement provisions relating to attorneys' fees and litigation expenses in the Action were never discussed or negotiated during mediation or during any other negotiations, and were just an item presented, after mediation, by the mediator, in the mediator's proposal. (Kabateck Decl., ¶ 10.)  The actual amount of any fee and cost award is subject to review and approval by this Court, after Class Members have had an opportunity to object. (See **Ex. A**, § I.A.)  Any amounts not awarded by the Court as fees and costs will remain in the Net Settlement Amount for the Class. (*Id.* at § II.D.)

## IV.  STANDARDS FOR APPROVAL OF SETTLEMENT

### A.  The Two-Step Approval Process

Any settlement of class litigation must be reviewed and approved by the Court. (Federal Rules of Civil Procedure, Rule 23(e).)  This is done in two steps: (1) an early (preliminary) review by the Trial Court and (2) a final review after notice has been distributed to the Class Members for their comments or objections. (*Manual for Complex Litigation* (3d ed. 1995) § 30.41.)

As Professor Newberg comments, "[t]he strength of the findings made by a judge

at a preliminary hearing or conference concerning a tentative settlement proposal may vary. The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid subject only to any objections that may be raised at a final hearing." (4 Alba Conte & Herbert B. Newberg (4th ed. 2002) Newberg on Class Actions, § 11.26.)

Here, the Parties have reached such an agreement and the Settlement Agreement sets forth all terms of the Settlement reached by the Parties. (Kabateck Decl., ¶ 2; see generally, **Ex. 1**.)

**B.    Class Counsel's Thorough Investigation and Litigation Efforts**

Throughout the prosecution of the Class Action, the Parties have engaged in sufficient investigation, analysis, and discussions to assess the relative merits of the claims of Plaintiffs and Defendant's defenses to them, as well as the likelihood of recovery. (Kabateck Decl., ¶¶ 4, 5.)

The Parties exchanged in extensive informal discovery in preparation for the mediation session that took place on March 16, 2018 with the Hon. Enrique Romero (Ret.), a well-respected and experienced class action mediator. (Kabateck Decl., ¶ 5.) In anticipation of the realistic possibility that the mediation would not lead to resolution, the Parties propounded special interrogatories and requests for production of documents and noticed depositions to take place if the mediation was not successful. (*Id*.)  In preparing their case for mediation and the possibility of continued contested litigation, Plaintiffs' counsel conducted a substantial amount of research and reviewed hundreds of pages of pertinent documents, agreements, and records provided by the Plaintiffs. (*Id*.)  Plaintiffs' counsel prepared a 28-page mediation brief and conducted analyses in an attempt to create a valuation of the class-wide damages. (*Id*.)

As mentioned, the Parties participated in an arm's-length mediation session on March 16, 2018 with the Hon. Enrique Romero (Ret.). The mediation last over 8 hours and was attended by Plaintiff JOHN MARIN and Co-Class Counsel and Defendant and its counsel. (Kabateck Decl., ¶ 5.)  The mediation did not result in an immediate

resolution of the Class Action. (Kabateck Decl., ¶ 5.)  Subsequently, Judge Romero
made a "mediator's proposal" for One Million Dollars ($1,000,000.00). (*Id.*)  With the
benefit of the foregoing experience and informal discovery and data provided in the
weeks leading up to the mediation, counsel were well-placed to properly evaluate the
strengths and weaknesses of their respective claims and defenses debated at length at
mediation, the value of the proposed Settlement, and the risks and expenses of continued
litigation through trial and appeal. (*Id.*)  Both sides ultimately accepted the proposal and
worked diligently to craft a thorough settlement agreement.

### C.    Procedures for Settlement Before Class Certification

"[P]re-certification settlements are routinely approved if found to be fair and
reasonable." (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 244; accord
*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1803 (Although the settlement
was reached before any "adversary certification," the court was satisfied that it was "fair,
adequate, and reasonable.")) The standard for class certification in the settlement context
is a significantly lower threshold that in a contested proceeding or a trial context. (*Dunk*,
*supra*, 48 Cal.App.4th at 1807, fn. 19.)  The reason for this is that no trial anticipated in
the settlement context, so any case management issues inherent in determining if the
class should be certified need not be confronted. (*Amchem Prods. v Windsor* (1987) 521
U.S. 591, 620.)

The very liberal standard expressed in *Dunk* is plainly satisfied here. The
requirements for class certification in the settlement context—ascertainability,
numerosity, predominance of common questions of law and fact, typicality, and
adequacy are all met here.

### 1. Ascertainability and Numerosity

Plaintiffs assert, and Defendant does not oppose for settlement purposes only, that
the proposed Settlement Class is ascertainable and sufficiently numerous. A "class is
ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common
characteristics sufficient to allow a member of that group to identify himself or herself as

having a right to recover based on the description." (*Bartold v. Glendale Fed. Bank* (2000) 81 Cal.App.4th 816, 828.) The class definition, the size of the class, and the means for identifying the members of the class determine whether the class is ascertainable. (*Reyes v. Bd. of Supervisors* (1987) 196 Cal.App.3d 1263, 1274.)

In this case, the members of the proposed Settlement Class are identifiable from Defendant's own records. Further, the Settlement Class Members are also sufficiently numerous to justify class certification. Defendant has identified 1,214 current and former instructors engaged by Defendant comprising the Settlement Class.

## 2. Predominance of Common Questions of Law and Fact

The interrelated commonality and predominance requirements are satisfied if common issues predominate. At its heart, this is a procedural inquiry asking "whether . . . the issues which may be jointly tried, when compared with those requiring separate jurisdiction, are so numerous or so substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (citing *Collins v. Rocha* (1972) 7 Cal.3d 232, 238).) Further, in the lower threshold of the settlement context, "commonality of issues only makes a difference if the non-representative class members would do much better by litigating on their own." (*Dunk*, *supra*, 48 Cal.App.4th at 1807, fn. 19.)

Plaintiffs contend, and Defendant does not dispute for settlement purposes only, that the Settlement Class Members' claims all stem from a common set of circumstances and occurrences. By definition, all worked as independent contractor instructors for Defendant. Plaintiffs contend that Defendant misclassified its instructors and failed to provide them meal and rest breaks, or pay them proper wages and overtime wages.

Specifically, Plaintiffs contend, and Defendant does not dispute for settlement purposes only, that commonality is satisfied. The claims of Plaintiffs and Class Members all flow from the same facts and legal claims arising from Defendant's alleged misclassification of instructors as "independent contractors" in violation of Labor Code

§ 226.8(a)(1), and whether, as a result of such alleged misclassification, Defendant failed to comply with other provisions of the Labor Code.

A common course of conduct is at the core of the allegations that Defendant violated California wage and hour laws, which create numerous questions of law and fact common to all Settlement Class Members. The complex questions implicated by the facts and law in this case strongly suggest that Settlement Class Members could not do substantially better than this Settlement by litigating individually. (*Id.* at ¶ 9; see *Dunk*, *supra*, 48 Cal.App.4th 1807, fn. 19.)  Thus, Plaintiffs contend, and Defendant does not dispute for settlement purposes only, that the commonality and predominance requirements for certification, particularly in the less intensive context of a Settlement Class are therefore satisfied.

### 3.  Typicality

Typicality means merely that the class representative is similarly situated to the members of the class, not that his claims are identical. (*Classen v. Weller* (1983) 145 Cal.App.3d 27, 45–46.)  It suffices if the class representative's claims arise from the same event or course of conduct that gives rise to the class claims, and are premised upon the same legal theories. (*Id.*)

Here, Plaintiffs submits, and Defendant does not dispute for settlement purposes only, that each of their claims arises out of the same type of factual and legal circumstances of each Class Member. Plaintiffs contends that they regularly missed meal periods and rest breaks without proper compensation and worked overtime without proper compensation, and, based on their personal observations and understanding of Defendant's operations with respect to Plaintiffs and each Class Member, each Class Member suffered the same types of injuries. As such, for purposes of certifying the Settlement Class, the typicality requirement is satisfied.

### 4.  Adequacy

"Adequacy of representation depends on whether the plaintiff's attorney is qualified to conduct the proposed litigation and the plaintiff's interests are not

antagonistic to the interests of the class." (*McGee v. Bank of America* (1976) 60 Cal.App.3d 442, 487.)  Here, Plaintiffs submits, and Defendant does not dispute for settlement purposes only, that they possess the same type of interests and suffered the same type of injuries as the other Class Members. In addition, Plaintiffs' counsel, Brian Kabateck of Kabateck Brown Kellner LLP and Charles L. Murray III have extensive experience in class action wage and hour litigation, including federal and state misclassification and wage and hour class actions. (Kabateck Decl., ¶ 4, 12, 13.)

## V.    THE SETTLEMENT IS FAIR AND REASONABLE BASED UPON OBJECTIVE EVIDENCE.

The settlement is fair, reasonable, and adequate for the reasons stated in this brief and the accompanying Declaration of Brian S. Kabateck filed in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. (Kabateck Decl., ¶¶ 5, 9.) The settlement for each Participating Class Member is fair, reasonable, and adequate, given the inherent risk of litigation, the risk relative to class certification, and the costs of litigation. (*Ibid.*)  After expeditiously but prudently litigating this matter involving thorough investigation, in-depth analysis of large volumes of data, a lengthy mediation session followed by weeks of ongoing settlement negotiations, the Parties settled the Class Action. (Kabateck Decl., ¶ 5.)

### A.    The Strength of Plaintiffs' Case and Complexities of Further Litigation

Plaintiffs believe that the Class claims in this action are legally meritorious and present a reasonable probability of a favorable determination on behalf of the Class, as is borne out by the significant amount offered in the settlement. At the same time, there is undeniably significant litigation risk avoided by the proposed Settlement, whether at class certification proceedings, at trial, or in appellate proceedings.

The settlement amount is, of course, a compromise figure. (*Id*.)  Plaintiffs took into account the risks that the class would not be certified or later decertified, risks related to proof of damages, risks related to the interpretation of California employment law, and the strengths and weaknesses of Defendant's other defenses. (*Id*.)  Plaintiffs

also took into account the possibility that if a settlement were reached after additional years of litigation, the great expense and attorneys' fees of litigation would reduce the amount of funds available to the Class Members. (*Id.*)  Furthermore, Plaintiffs also took into consideration the time delay and financial repercussions of trial and the possibility of an appeal by Defendant. (*Id.*)  Accordingly, the Settlement Amount is fair and adequately compensates the Class for the wage and hour claims. (*Id.*)

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered. In short, there is a presumption that the negotiations were conducted in good faith. (*Newberg*, § 11.51; *In re Chicken Antitrust Litigation* (N.D. Ga. 1980) 560 F.Supp. 957, 962; *Priddy v. Edelman* (6th Cir. 1989) 883 F.2d 438, 447; *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.* (7th Cir. 1987) 834 F.2d 677, 682.)  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the  (*Hammon v. Barry* (D.D.C. 1990) 752 F.Supp. 1087; *Steinberg v. Carey* (S.D.N.Y. 1979) 470 F.Supp. 471; *In re Armored Car Antitrust Litigation* (N.D. Ga. 1979) 472 F.Supp. 1357, aff'd in part, rev'd in part in 645 F.2d 488 (5th Cir. 1981).)

While the recommendations of counsel proposing the settlement are not conclusive, the Court can properly take them into account, particularly where, as here, they appear to be competent, have experience with this type of litigation, and have obtained substantial evidence from the opposing party. (See 4 *Newberg on Class Actions*, § 11.47.)  Here, the plaintiff and defense firms involved in the case have a great deal of experience in wage and hour class action litigation. Kabateck Brown Kellner LLP, counsel for Plaintiffs have been approved as class counsel in numerous other wage and hour class actions. (Kabateck Decl., ¶¶ 4, 28.)

As already discussed herein, the Parties have engaged in sufficient investigation, analyses, and discussions to assess the relative merits of Plaintiffs' claims and Defendant's defenses to them. (*Id.*, at ¶ 5.)  The settlement is for a total of $1,000,000, it

16

does not require that the Class Members submit claim forms, and there is no residual to revert to Defendant. (**Ex. 1**, § I.P.)  Any portion of a Class Member's settlement not paid as a result of an invalid address or any checks issued by the Settlement Administrator to Participating Class Members not cashed within one hundred and eighty (180) days will be void. (**Ex. 1**, §§ II.A.3., IV.L.)  The proceeds from any uncashed checks from the Net Settlement Amount shall be paid to the State of California Unclaimed Wages Fund in the name(s) of the corresponding Participating Class Member(s), which shall remain available for those Participating Class Members to claim thereafter. (**Ex. 1**, §§ II.A.3., IV.L.)

Counsel are of the opinion that the settlement documented in the Settlement Agreement is fair, adequate, and reasonable and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay and defenses asserted to the merits and the class action status of this Action. (Kabateck Decl., ¶¶ 4, 5, 8, 9.)

**B.    The Benefits Conferred by the Settlement**

The proposed Settlement provides for an easy settlement administration procedure which imposes minimal burdens on the Class. (Kabateck Decl., ¶ 9; see **Ex. A** to Ex. 1.) There is no claims-made process, and there is a simple opt-out procedure by which Class Members may submit to the Settlement Administrator a request to be excluded from the Settlement within forty-five (45) days from the date Notice Packets are mailed to the Class. (**Ex. A**, § IV.F.)  The Individual Settlement Payments paid from the Net Settlement Amount to Participating Class Members will be determined as follows:  Each Class Member who does not opt out shall receive a proportional share of the Net Settlement Amount. Proportional Individual Settlement Payments shall be computed and paid as described in Section III.C. above ("Value Of the Settlement To The Class").

Each Class Member's Course Weeks Worked in each Course Type will be set forth on the Class Member's Notice of Estimated Individual Settlement Payment along with the amount of the estimated Individual Settlement Payment. (*Id.*, at § IV.D.; see **Ex.**

**B** to Ex. 1.)  Individual Settlement Payments will be paid from the Non-Reversionary Net Settlement Amount to Participating Class Members as discussed herein and set forth in the Settlement Agreement. (**Ex. A**, § II.A.)

The Individual Settlement Payments to Participating Class Members are made in exchange for Participating Class Members' release of all Released Parties from all Released Claims, which is set forth in the Settlement Agreement at sections I.CC. and I.DD. (*Id*., at §§ I.CC., I.DD.)

In addition to the Released Claims set forth in the Settlement Agreement that are mentioned above, only Named Plaintiffs enter into a broader general release, including a waiver of California Civil Code Section 1542 as to any claims they do not know or suspect to exist in his favor against the Released Parties (*Id*., at § III.D.), with the exception of Named Plaintiff John Marin's ability to enforce a separately negotiated individual settlement agreement between him and Defendant, in the case titled *John Marin v. General Assembly Space, Inc*., Case No. BC697481, filed in the Superior Court of the State of California, County of Los Angeles, for individual breach of contract and discrimination claims. (*Id*., at §§ III.C, III.D.)

### C.     The Experience and Views of Counsel

Although recommendations of counsel proposing the Settlement are not conclusive, the Court can properly take them into account, particularly if they have been involved in litigation for some period of time, have experience with this type of litigation, and discovery has commenced. (*Newberg*, § 11.47.)  Indeed, courts should not substitute their judgment for that of the proponents of a settlement, especially when negotiated by experienced counsel familiar with the litigation. (See, e.g., *Hammon v. Barry* (D.D.C. 1990) 752 F.Supp. 1087 (citing *Newberg* § 11.44).)

Plaintiffs' counsel Brian Kabateck of Kabateck Brown Kellner LLP is experienced in class action litigation, with decades of complex litigation experience, including particular experience in wage-and-hour class action litigation. (Kabateck Decl., ¶ 4.)  Plaintiffs' co-counsel Charles L. Murray has decades employment litigation

and trial experience and is very familiar with the risks of trial. Defense counsel are no less qualified or experienced. (Kabateck Decl., ¶ 4.)  This was a hard-bargained settlement hammered out through lengthy negotiations at mediation and presented in a subsequent mediator's proposal from an experienced class action mediator who is a retired judge. (Kabateck Decl., ¶ 5.)  Counsel concur for purposes of settlement only that the Settlement represents a fair and reasonable resolution to this matter in light of the various risks and costs to the parties of continued litigation. (*Id.*, at ¶¶ 5, 9.)

### D.    The Absence of "Obvious Defects" or Any Indicia of Unfairness.

There was no collusion among the settling Parties, or any other "obvious defect" or indicia of unfairness with regard to the proposed Settlement. (*Id.*, at ¶ 4.)  Litigation was at all times fully adversarial, with counsel for each side vigorously advocating for their clients' respective positions. (*Id.*)

The proposed Settlement does not place Named Plaintiffs' interests ahead of the interests of the Class as a whole.  (Kabateck Decl., ¶ 8.)  Apart from a reasonable Enhancement Payment for their efforts on behalf of the Class, typical in class action litigation (and subject to Court approval after notice to the Class), Named Plaintiffs' personal recovery in this Action and Settlement will be determined in the same as any other Participating Settlement Class Member. (*Id.*)

The proposed Settlement also does not place the attorneys' interests ahead of Class Members' interests. Settlement provisions relating to attorneys' fees and litigation expenses in the Action were never negotiated, and were just an item presented, after mediation, by the mediator, in the mediator's proposal. (*Id.*)  Further, the Settlement provides only for a maximum permissible amount of the request for any award of attorneys' fees and litigation expenses. Any award of fees and expenses remains to be determined by the Court at the time of the fairness hearing and must necessarily be found to be fair and reasonable to the Settlement Class based on applicable law.

### E.    The Settlement Falls Within the Range of Possible Approval.

Finally, the Court must consider whether the settlement falls within the range of

possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2009) 670 F.Supp.2d 1114, 1125.

Co-Class Counsel have calculated the maximum damages to the class members, exclusive of penalties and interest, to be approximately $6,362,745, should the case proceed to trial. (Kabateck Decl., ¶ 10.) Defendants contest liability, the damages calculations made by Co-Class Counsel, as well as the propriety of certification, and are prepared to vigorously defend against Plaintiffs' claims and oppose certification if the action is not settled. (*Id*.) The application of the law to certain facts in this case are both unsettled and uncertain. Given the maximum potential damages, as well as the substantial risks entailed by this case, the $1,000,000 non-reversionary settlement sum is within the range of possible approval. (*Id*.)

The significant risk that this Court may deny class certification is obviated by the Settlement, particularly in light of certification standards under Federal Rule of Civil Procedure, Rule 23, as articulated by the U.S. Supreme Court in *Wal-Mart Stores, Inc. v. Dukes* (2011) 131 S.Ct. 2541. (*Id*.) Even if Plaintiffs were to obtain certification and prevail on the merits, a controversy exists as to each cause of action and Plaintiffs recognize that proving the amount of wages alleged to be due to each individual Class Member would be an expensive and time-consuming proposition. (*Id*.) The fact that a settlement will eliminate delay and further expenses weighs in favor of approval. *Id*.; *see also Rodriguez v. West Publ'g Corp.* (9th Cir. 2009) 563 F. 3d 948, 966.

The simple fact is that there is no guarantee that the Class would recover even close to this amount if this Action proceeded to certification and trial. This Settlement represents a compromise based on the facts and circumstances attendant to this Action. There is undeniably significant litigation risk avoided by the proposed Settlement, whether at class certification proceedings, at trial, or in appellate proceedings.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

## VI.    <u>CONCLUSION</u>

2

        For the foregoing reasons, Plaintiffs respectfully requests that the Court grant this

3

Motion for Preliminary Approval and enter the concurrently submitted Proposed Order.

4

5

Dated:  July 2, 2018            **KABATECK BROWN KELLNER LLP**

6

7

                    By:    <u>/s/ Brian S. Kabateck</u>

                            Brian S. Kabateck

8

                            Shant A. Karnikian

9

                        *Attorneys for Plaintiffs JOHN MARIN and*

10

                        *KEYAN BAGHERI, individuals, on behalf of*

11

                        *themselves and all others similarly situated*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT